In re **NORTHWEST ELECTRIC COM-PANY and Northwest Electric Company of Ohio, Debtors.**

**NORTHWEST ELECTRIC COMPANY, Plaintiff,**

v.

**GENERAL ELECTRIC SUPPLY COMPANY, Defendant.**

**GENERAL ELECTRIC SUPPLY COMPANY, Movant,**

v.

**NORTHWEST ELECTRIC COMPANY, Respondent.**

**Bankruptcy Nos. 86–595E and 86–596E. Adversary No. 87–0032. Motion No. 87–433.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 20, 1988.

Norman E. Gilkey, Pittsburgh, Pa., for defendant/movant.

Lawrence C. Bolla, Erie, Pa., for debtor/plaintiff.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Facts

Northwest Electric Company ("Northwest") was in the electrical contracting business and filed the within Chapter 11 case on December 5, 1986. (Northwest Electric Company of Ohio, a companion debtor, has no part in this adversary proceeding.)

In the course of Northwest's business, it performed electrical contracting services for General Electric Company and purchased goods from General Electric *Supply* Company. However, "General Electric Supply Company" was proved to be a fictitious name under which "General Electric Company" did certain kinds of business. Hence, the two names must be treated as relating to the same entity. (That entity is hereinafter referred to as "GE.")

A balance due from the debtor to GE (General Electric *Supply* Company) in June 1986 on account of purchases was then reduced to writing by way of a promissory installment note executed by the debtor on which the balance at the time of the bankruptcy on December 5, 1986 was $23,508.83. No payments were made after September 4, 1976.

From October through December 5, 1986 (within 90 days of the date of bankruptcy), the debtor performed work for GE in the amount of $26,420.03. From December 5, 1986 through December 31, 1986, the debtor performed further contracting work of a value of $5,515.20 or a total amount of $31,935.23 for the period October through December 1986.

Northwest brought this adversary proceeding to recover the $31,935.23, seeking to deny GE's attempt to set off against that amount, the $23,508.83 due by Northwest to GE. GE also brought the above motion for relief from stay so as to be permitted to make the set off of the contra accounts.

### Discussion

■ At issue is § 553 of the Bankruptcy Code. The debtor argues that § 553(b) is applicable. That subsection states: "... if a creditor offsets a mutual debt owing to the debtor against the debtor on or within 90 days before the date of filing of the petition, then the trustee may recover from such creditor ..." Subsection (b) is clearly applicable only where the creditor has made the offset "on or within 90 days before the date of the filing of the petition." The debtor's position must necessarily be that something automatically happened upon the filing of the bankruptcy petition which operated as a making of the setoff on that date. The legislative history of this section seems to show a purpose of encouraging creditors not to make setoffs

which would *precipitate* a bankruptcy; the provision was intended to encourage lenders to help a debtor with a voluntary workout rather than precipitating a bankruptcy proceeding. The inaction of GE prior to the filing of the bankruptcy may not be considered to be the making of a setoff under § 553(b) of the Bankruptcy Code.

The debtor cites Pennsylvania cases to the effect that the setoff may be presumed, and that a setoff may be deemed to be made as soon as the contrary accounts arise. However, we think it clear that such view was not contemplated by the drafts-·men of § 553, and that there must be an overt act by the creditor prior to bankruptcy in order to invoke the provisions of § 553(b).

Since there was no setoff made by the creditor, then under § 553(a), the creditor may make the setoff (as soon as he obtains relief from the automatic stay) unless the creditor falls within one of the exceptions set forth in § 553(a).

None of the exceptions of § 553(a) appear to apply here. Under sub-paragraph (a)(1), the claim will not be disallowed. Under sub-paragraph (a)(2), the claim here clearly was not "transferred" to GE; the claim arose in favor of GE through transactions between the debtor and GE. The sub-paragraph (a)(3) might be applicable since the debt from the creditor to the debtor was incurred after 90 days before the date of the filing of the petition and while the debtor was insolvent. However, there is no evidence that the claim was incurred by the creditor "for the purpose of obtaining a right of setoff against the debtor" which is a conjunctive requirement under sub-paragraph (a)(3)(C). The debtor's counsel did not stress this element, nor offer any evidence thereupon, and the brief on behalf of GE states that the parties had a business relationship of long standing and there is no basis for concluding that GE engaged Northwest to do the contracting work in late 1986 "for the purpose of obtaining a right of setoff."

As of the date of bankruptcy, December 5, 1986, GE owed to Northwest $26,420.03. As of that date, the debtor owed to GE $23,508.83. GE had, and retains, the right of setoff. Hence, on December 5, 1986, GE owed the debtor a net amount of $2,911.20. Thereafter, the debtor performed an additional $5,515.20 of work. Thus, the total net amount owed by GE to Northwest is $5,515.20 plus $2,911.20 or a total of $8,426.40.

The debtor has not urged the applicability of § 547, since the work performed by the debtor for the creditor was not supplied "for or on account of an antecedent debt" as required by § 547(b)(2).

For the reasons stated, an order will be entered in favor of Northwest in the amount of $8,426.40, and dismissing all other matters.